THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHANNEL CONSTRUCTION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NORTHLAND SERVICES, INC., et al.,<br><br>Defendants. | CASE NO. C14-1231-JCC<br><br>ORDER DENYING MOTION TO QUASH AND COMPELLING PRODUCTION OF DOCUMENTS AND TESTIMONY |

This matter comes before the Court on Plaintiff's motion to quash the subpoena served on expert witness Richard W. Blomquist (Dkt. No. 45) and Defendants' motion to compel production of documents and testimony by Mr. Blomquist. (Dkt. No. 43). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion to quash (Dkt. No. 45) and GRANTS the motion to compel (Dkt. No. 43) for the reasons explained herein.

I.  BACKGROUND

On three occasions between 2010 and 2012, Channel Construction Inc. ("Channel Construction" or "Channel") chartered Barge ITB 312 ("the Barge") to Defendant Northland Services, Inc. ("Northland") as a platform for A/C generation and refrigeration of fish products.

ORDER DENYING MOTION TO QUASH AND
COMPELLING PRODUCTION OF DOCUMENTS
AND TESTIMONY
PAGE - 1

In the summer of 2011, the Barge began developing a starboard list, which Channel President William Tonsgard Jr. feared might have been caused by the generator system. (Dkt. No. 61, Ex. A at 2.) Mr. Tonsgard wrote to Northland on June 15, 2012, requesting that it examine whether the Barge had suffered electrolysis when it next took the Barge out on charter in a few days. (Dkt. No. 61, Ex. A at 2.) Northland responded, characterizing electrolysis as a "long-term maintenance issue[]" that it had neither the responsibly nor the time to address. (Dkt. No. 61, Ex. B at 1.) After that last charter ended in late 2012, the Barge sailed down from Southeast Alaska to Seattle, carrying a cargo of scrap metal. (Dkt. No. 1 at 4.) While passing near the San Juan Islands, the boat began to take on water. Channel contacted its maritime insurance broker, International Marine Underwriters ("IMU") to arrange an emergency survey. (Dkt. No. 45 at 2.) The Barge was drydocked in Anacortes where IMU hired maritime surveyor Richard Blomquist to assess the damage.

  Mr. Blomquist surveyed the Barge on December 8, 10, and 11, 2012. He issued a report on December 12 that found severe hull damage caused by stray-current corrosion, otherwise known as electrolysis. (Dkt. No. 43 at 5.) The report did not address potential issues of fault. On the same day Mr. Blomquist issued his report, IMU hired Mr. McVittie as their legal representative. (Dkt. No. 43 at 5.) Channel soon hired its own counsel, Mr. McGee, on December 14 to work alongside Mr. McVittie, allegedly to consider possible litigation against Northland. (Dkt. No. 45 at 4.) This collaboration ended in early February 2013 when IMU expressed its refusal to cover the damage. Mr. McVittie never again advised Channel. (Dkt. 48 at 2.) Subsequently, Channel filed for bankruptcy.

  Over the course of the relevant proceedings, Northland and its underwriters sought access to Mr. Blomquist and his files in order to conduct a Rule 2004 hearing as interested parties. (Dkt.

No. 61, Ex. D at 4, Ex. E.) The Bankruptcy Court for the District of Alaska granted their request, explaining that if Mr. Blomquist was ever Channel's expert, this was certainly not the case "until some time after his December 12, 2012 report." (Dkt. No. 61, Ex. D at 4, Ex. E.)

On October 11, 2014, Channel sued Northland and its underwriters ("Defendants"), alleging that the damage resulted from one of their charters. (Dkt. No. 1.) Defendants served Mr. Blomquist with two subpoenas on December 18, 2014, requesting the files underlying his December 12, 2012 survey report, and requesting that he testify at a deposition. (Dkt. No. 43.) Defendants theorized this evidence would show that the "natural seawater electrolysis damage was being caused by plaintiff's own failure to have sacrificial zincs on the barge and keep the bottom properly coated." (Dkt. No. 64 at 6.) Defendants followed their subpoenas by filing the Motion to Compel on January 8, 2015. (Dkt. No. 43.) On the same day, Channel moved to quash only the subpoena issued for Mr. Blomquist's appearance. Channel argues that Mr. Blomquist is their expert witness because he was hired to prepare a report in anticipation of litigation, and that the files are protected work product because they were prepared in anticipation of litigation. (Dkt. No. 45.)

## II.     DISCUSSION

### A.     Standard of Discovery under Federal Rule of Civil Procedure 26(b)(1)

"Unless otherwise limited by court order . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The "discovery provisions [in Rule 26] are to be applied as broadly and liberally as possible, [with] the privilege limitation . . . restricted to its narrowest bounds." *Hickman v. Taylor*, 329 U.S. 495, 506 (1947). The party resisting discovery therefore bears the burden to

show that its documents are protected by privilege. *Everest Indem. Ins. Co. v. QBE Ins. Corp.*, 980 F.Supp.2d 1273, 1277 (W.D. Wash. 2013).

### B. Privilege for Work Product or Report Prepared in Anticipation of Litigation

Channel argues that the files underlying Mr. Blomquist's report are privileged work product. It also argues that Mr. Blomquist's testimony regarding that report is privileged because he was an expert retained for litigation at the time of the report's preparation. To assert either privilege requires that the report have been "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A). The work product doctrine "protects trial preparation materials that reveal an attorney's strategy, intended lines of proof, evaluation of strengths and weaknesses, and inferences drawn from interviews." *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545, 549 (W.D.Wash. 2004); *see Hickman*, 329 U.S. at 512 (recognizing the underlying policy against "invading the privacy of an attorney's course of preparation"). Given the liberality of the discovery rules, however, the court will not allow a party to withhold "relevant and non-privileged facts [that] remain hidden in an attorney's file" *Hickman*, 329 U.S. at 511. In sifting through that proverbial file, the court will only deem documents work product that were prepared in anticipation of litigation. This determination looks to the "nature of the document and the factual situation in the particular case." *United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011). Courts will most readily protect documents that were prepared exclusively for litigation.

Corporate actors will often create documents for routine or investigative purposes even as they are aware that there may eventually be a possibility of litigation. In analyzing such dual-purpose documents, courts must determine "whether the document was created *because of* anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568 (internal citations omitted and emphasis added).

Therefore, "[t]he fact that a defendant anticipates the contingency of litigation resulting from an accident or event does not automatically qualify an 'in house' report as work product." *Binks Mfg. v. National Presto Industries, Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983). The Seventh Circuit has articulated the requirements for this privilege by stating that the party claiming privilege must put forward "objective facts establishing an identifiable resolve to litigate prior to the investigative efforts resulting in the report." *Id.*

Channel alleges it had litigation in mind when Mr. Blomquist was retained. It points to a short email written two years prior to litigation suggesting a concern that Northland may have been at fault for possible damage. (Dkt. No. 61, Ex. A at 2.) Assuming *arguendo* that the email does indicate a concern that Northland may have been at fault for possible damage, the email is nevertheless insufficient to protect the files or Mr. Blomquist's testimony. A suggestion of possible fault is distinct from "an identifiable resolve to litigate." Any concern with the possibility of later litigation that may have been indicated by the email was overshadowed by the more imminent purposes of filing an internal claim with IMU and addressing the emergency that caused the Barge to be put in drydock. The nature of the report given the circumstances of its preparation suggests that it would have been prepared regardless of whether Plaintiff was concerned with fault or contemplating litigation. Courts have routinely rejected claims of work product privilege under similar conditions.

Defendants cite to persuasive New York cases holding that "reports sent by an insured … are generally considered to have been created in the ordinary course of business rather than in anticipation of imminent litigation." *Calabro*, 225 F.R.D at 100; *see Brooklyn Union Gas Co. v. Am. Home Assur. Co.*, 23 A.D.3d 190, 190-91 (N.Y. App. Div. 2005) (holding the same regarding reports by "insurance investigators or adjusters, prepared during the processing of a

claim"). Defendant also cites to a closely analogous case in this District, in which the plaintiff was entitled to compel the production of a report that the Defendant's Captain had prepared after investigating a crash between the parties' vessels. *Leviathan, Inc. v. M/S Alaska Maru*, 86 F.R.D. 8, 9 (W.D. Wash. 1979). In *Leviathan,* the defendant claimed that the Captain's report was protected because it was prepared in anticipation of litigation. The court rejected this argument, noting that the Captain had made his report several months before litigation and had not been an "expert retained or specially employed by the party in preparation for trial." The court reasoned that if the defendant could avoid production of the report simply by classifying the Captain as an expert then "the master of any vessel could be so classified." *Id.*

Here, not only did IMU and not Channel hire Mr. Blomquist, but they did so prior to any expressly anticipated litigation. Any possible involvement on Channel's part was either in order to assess a claim with IMU or to address a routine maritime emergency. Regarding the first possibility, Channel has failed to demonstrate that the report was more than a routine step in IMU's claims process. Regarding the second possibility, the caution expressed in *Leviathan* remains relevant. If every drydock survey or claims investigation were deemed completed in anticipation of litigation, then very little in admiralty would escape work product privilege. The Court therefore finds that the privilege does not apply.

C. **Motion to Quash**

Channel lacks standing to protect Mr. Blomquist's testimony because Mr. Blomquist is a nonparty to the litigation. (Dkt. No. 43 at 7.) *See TMP Worldwide Advertising & Communications, LLC v. Latcareers, LLC,* 2008 WL 5348180 (W.D. Wash. 2008) ("[g]enerally, a party lacks standing to challenge a subpoena issued to a nonparty, or third party, unless the party making the challenge claims a personal right or privilege with respect to the discovery

sought in the subpoena.") (citing Fed. R. Civ. P. 45). Channel has no valid claim to a personal right or privilege with respect to the subpoena at issue. The Court therefore has no basis for quashing it.

### D. Attorney Fees

Defendant National Casualty Underwriters asks the Court to order Channel to pay attorney fees because it was forced to oppose Plaintiff's motion to quash in an effort to obtain the discovery it was entitled to. (Dkt. No. 58 at 10.) In support of this request, Defendant relies on an unpublished case from the Northern District of West Virginia. *CSX Transp., Inc. v. Gilkison*, No. CIV.A. 5:05-CV-202, 2009 WL 2985594, at *5 (N.D.W. Va. Sept. 15, 2009) ("Rule 45 does not explicitly subject failed motions to quash a subpoena duces tecum to Rule 37 penalties. However, district courts have imposed reasonable expenses upon moving parties losing their motion to quash."). While the cited Order accurately reflects the decisions of a variety of district courts, Defendant cites no Ninth Circuit or Supreme Court case requiring fees for parties that successfully oppose motions to quash. The Court declines to award such fees here.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel (Dkt. No. 43) is hereby GRANTED, and Plaintiff's Motion to Quash (Dkt. No. 45) is hereby DENIED.

The Court finds good cause to order non-party witness Richard W. Blomquist to produce all documents required by the Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action directed to Richard W. Blomquist dated 12/17/14 ("Subpoena 1"), and finds good cause to order non-party witness Richard W. Blomquist to testify on all subjects set forth in the Subpoena to Testify at a Deposition in a Civil Action directed to

ORDER DENYING MOTION TO QUASH AND
COMPELLING PRODUCTION OF DOCUMENTS
AND TESTIMONY
PAGE - 7

Richard W. Blomquist dated 12/17/14 ("Subpoena 2").

Accordingly, the Court ORDERS non-party Richard W. Blomquist to produce all documents pursuant to Subpoena 1 within ten days of this Order, and ORDERS non-party Richard W. Blomquist to testify at a deposition pursuant to Subpoena 2 within ten days thereafter, unless the parties agree to other dates.

Counsel for Channel Construction, Inc., shall serve this order on Richard W. Blomquist promptly after its issuance.

DATED this 24th day of February 2015.

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE