THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

CHANNEL CONSTRUCTION, INC.,

Plaintiff,

v.

NORTHLAND SERVICES, INC., *et al.*,

Defendants.

CASE NO. C14-1231-JCC

IN ADMIRALTY AND AT LAW

ORDER ON DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

This matter comes before the Court on Defendants' motions for summary judgment (Dkt. Nos. 94, 96, 98). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Northland's motion and GRANTS the Underwriters' motions for the reasons explained herein.

I.     BACKGROUND

The factual background of this conflict has been thoroughly summarized by the Court in a prior order. (*See* Dkt. No. 66.) Briefly, this case arises from damage to the hull of Barge ITB 312 ("the Barge"), a vessel chartered by Plaintiff Channel Construction ("Channel") to Defendant Northland Services, Inc. ("Northland") in 2010, 2011, and 2012. (*See* Dkt. No. 1 at 3-4.) Plaintiff sued Northland, alleging liability for the damage, and Northland's underwriters ("the Underwriters"), alleging bad faith in handling Channel's claim for damage. (Dkt. No. 1 at 5-8.) Before the Court are Defendants' three motions for summary judgment. (Dkt. Nos. 94, 96, 98.)

## II.    DISCUSSION

### A.    Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B.    Northland's Motion (Dkt. No. 96)

Channel alleges that Northland breached its obligation under the parties' charter to maintain and redeliver the Barge in the same condition as upon delivery. (Dkt. No. 77 at 5-6.) Northland moves for summary judgment dismissal of this claim, arguing that Channel is to blame for the hull damage. (Dkt. No. 96 at 1.)

Under the parties' charters, Northland "shall be obligated to redeliver the [Barge] to [Channel] in the same good condition, repair and working order as upon delivery, [excluding] ordinary wear and tear occurring to the [Barge] during the charter term." (Dkt. No. 122-1 at 3-4, 11-12, 20-21.) At the beginning and end of each charter term, the Barge "shall be surveyed to comprehensively document its condition." (Dkt. No. 122-1 at 3.) The on-hire survey "shall be conclusive between the parties with respect to the condition of the [Barge] at delivery." (Dkt. No.

112-1 at 3.) The off-hire survey "shall be conclusive between the parties with respect to [Northland's] obligation to redeliver to the [Barge] to [Channel] in the same good condition, repair and working order as upon delivery." (Dkt. No. 122-1 at 3.) Channel and Northland "may agree in writing upon any appropriate method by which to establish the condition of the [Barge], but any method agreed must include written and/or photographic documentation of the [Barge's] condition." (Dkt. No. 122-1 at 3.) The parties agreed that "current survey walk around" was "mutually acceptable as the surveyor to conduct the [on-hire and off-hire] surveys." (Dkt. No. 122-1 at 3.)

Northland first asserts that the off-hire surveys for the 2012 charter revealed no corrosion damage occurring during the charter term. (Dkt. No. 96 at 15.) Northland employee Kent Connelly surveyed the Barge at the beginning and end of the 2012 charter term. (Dkt. No. 97-4 at 1; Dkt. No. 97-5 at 8.) Connelly's off-hire survey revealed no relevant damage.[1] (Dkt. No. 97-5 at 8.) Thus, Northland argues, it fully met its contractual obligation to redeliver the Barge in the same good condition. (Dkt. No. 96 at 15.) Channel contests this assertion, noting that the only survey was conducted by a Northland employee, without a Channel representative present, and without an inspection of the Barge's hull. (Dkt. No. 121 at 11.)

Thus, there is a dispute whether the survey conducted was "conclusive" as to Northland's fulfillment of its obligations. The key term, "current survey walk around," has not been defined or elaborated upon. It is possible that Connelly's survey sufficed. However, Northland has not established as a matter of law that its employee's survey—without Channel present and without inspecting the part of the Barge at issue here—was sufficient to satisfy Northland's obligation under the charter.

Northland further argues that there is no evidence that it was at fault for the damage. (Dkt. No. 96 at 14.) As a preliminary matter, the parties dispute whether Northland can be liable

---

[1] Connelly's report found "starboard #6 Lid and securing wing nut/bolt hatch assembly to have broken fasteners," but these parts are not at issue. (Dkt. No. 97-5 at 8.)

1   only for damage caused by its negligence, or whether it is strictly liable. (Dkt. No. 96 at 14-15;

2   Dkt. No. 121 at 8.) "Typically, under a bareboat charter, the owner must prove that damage

3   caused during the course of the charter was the result of the charterer's negligence." *KAI*

4   *Enterps., L.L.C. v. Boh Bros. Constr. Co., L.L.C.*, 731 F.Supp.2d 568, 576 (E.D. La. 2010).

5   However, the parties may contract around this rule. *Id.* For example, in *KAI*, the court found that

6   the parties had done so by including language that the charterer "assumes all risk of loss of and

7   damage to the vessel *from any cause.*" *Id.* (emphasis in original). Likewise, the U.S. Supreme

8   Court found absolute liability under a provision that the chartered "shall be liable and responsible

9   for any and all loss and damage" to the vessel. *Sun Printing & Publ'g Ass'n v. Moore*, 183 U.S.

10   642, 656 (1902). Here, the charters state that Northland "shall be solely responsible for all loss,

11   damage, liability . . . of any type or nature whatsoever and howsoever caused arising out of or

12   related to the [Barge] and/or its use or operation during the charter term or otherwise as a result

13   of this agreement." (Dkt. No. 122-1 at 5.) This provision, like those in *KAI* and *Sun Printing*,

14   indicates that Northland shall be liable for any damage occurring during the charter term,

15   excluding ordinary wear and tear, regardless of whether it was negligent.

16          Turning to the merits of Northland's argument, it asserts that Channel has set forth no

17   evidence that the damage was caused during the charter. (Dkt. No. 96 at 16.) Rather, Northland

18   asserts, the evidence shows that the corrosion damage was the result of "ordinary wear and tear,"

19   for which Channel is responsible. (Dkt. No. 96 at 16.) As support, Northland presents evidence

20   suggesting that the Barge was in poor condition and that Channel failed to keep the Barge's hull

21   properly coated. (*See* Dkt. No. 96 at 17; Dkt. No. 97-1 at 23, 32; Dkt. No. 97-2 at 1.) In response,

22   Channel offers evidence to suggest that the damage was caused by stray current corrosion. (*See*

23   Dkt. No. 121 at 11-12; Dkt. No. 118.) Northland protests that Channel's evidence consists solely

24   of inadmissible expert testimony. (*See* Dkt. No. 131 at 8.) But, this Court has since denied

25

26

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT
PAGE - 4

1   Northland's motion to exclude such testimony.[2] (Dkt. No. 136.) To the extent Northland still

2   challenges that evidence, it raises a question of credibility not properly resolved on summary

3   judgment. *See S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978).

4        In light of the conflicting evidence presented by the parties, there remains a genuine

5   issue of material fact as to the cause of the Barge's damage. Northland's motion for summary

6   judgment is DENIED.

7        **C.      Underwriters' Motions (Dkt. Nos. 94, 98)**

8        Channel alleges that the Underwriters failed to perform their obligations under the 2010,

9   2011, and 2012 insurance policies and that the 2012 Underwriters have handled Channel's claim

10  in bad faith. (Dkt. No. 77 at 7-9.) The Underwriters move for summary judgment, arguing that

11  the damage claimed is not covered under the contracts and that Channel cannot demonstrate that

12  they acted in bad faith. (Dkt. No. 94 at 2-3; Dkt. No. 98 at 1-2.)

13       The Court construes an insurance policy as a contract. *Weyerhaeuser Co. v. Commercial*

14  *Union Ins. Co.,* 15 P.3d 115, 122 (Wash. 2000). The Court construes the policy as a whole,

15  giving it a fair, reasonable, and sensible construction as would be given by the average person.

16  *Bordeaux, Inc. v. American Safety Ins. Co.*, 186 P.3d 1188, 1191 (Wash. Ct. App. 2008).

17       As a preliminary matter, the Underwriters assert—and Channel does not dispute—that

18  Channel has not tendered to the 2010 and 2011 Underwriters. (Dkt. No. 94 at 19.) Breach of the

19  duty to indemnify cannot occur before tender. *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191

20  P.3d 866, 873 (Wash. 2008). Channel's claims against the 2010 and 2011 Underwriters are

21  therefore DISMISSED. Going forward, any reference to the Underwriters refers only to those

22  who subscribed to the 2012 policy ("the Policy").

23

24  _____

25   [2] The Court acknowledges the dispute over the admissibility of the statement made by the
Lucky Buck manager to expert witness William Shattenberg. (*See* Dkt. No. 96 at 8-9; Dkt. No.
26  121 at 13-15.) The Court does not decide this issue at this time. The Court does not rely on the
statement in finding that there is a genuine issue of material fact.

1    The Underwriters assert that the Policy does not cover the damage to the Barge's hull.

2  (Dkt. No.94 at 2; Dkt. No. 98 at 1.) The Policy contains two clauses establishing the

3  Underwriters' liability. The first, the Perils clause, provides:

> Touching the Adventures and Perils which the Underwriters are contented to bear
> and take upon themselves, they are of the Seas, Men-of-War, Fire, Lightning,
> Earthquake, Enemies, Pirates, Rovers, Assailing Thieves, Jettisons, Letters of
> Mart and Counter-Mart, Surprisals, Takings at Sea, Arrests, Restraints and
> Detainments of all Kings, Princes and Peoples, of what nation, condition or
> quality soever, Barratry of the Master and Mariners and of all other like Perils,
> Losses and Misfortunes that have or shall come to the Hurt, Detriment or Damage
> of the Vessel, or any part thereof, excepting, however, such of the foregoing perils
> as may be excluded by provisions elsewhere in the Policy or by endorsement
> thereon.

10 (Dkt. No. 122-3 at 17.) The Underwriters assert that this is a "named perils" clause, providing

11 coverage for only specifically identified perils. (Dkt. No. 94 at 12.) While the Court largely

12 agrees, it notes that the clause includes "all other like Perils," indicating that it covers "all losses

13 which, although perhaps not technically or strictly speaking covered in the specific perils

14 enumerated, are losses very similar to or very much like the enumerated perils." *Feinberg v. Ins.*

15 *Co. of N. Am.*, 260 F.2d 523 (1st Cir. 1958). However, this Court has previously determined that

16 damage caused by electrolysis or corrosion is not a "peril of the sea." *Larsen v. Ins. Co. of N.*

17 *Am.*, 252 F. Supp. 458, 476-77 (W.D. Wash. 1965).

18    The second liability provision, the Inchmaree Clause, states:

19
> This Policy also covers loss of or damage to the Vessel directly caused by either:
20 > (a)    breakdown of motor generators or other electrical machinery and electrical
> connections thereto, bursting of boilers, breakage of shafts, or any latent defect in
21 > the machinery or hull, (excluding the cost and expense of replacing or repairing
> the defective part);
22 >          or
> (b)    other causes of whatsoever nature arising either on shore or otherwise
23 > provided the loss or damage arising from those causes set forth in either (a) or (b)
> has not resulted from want of due diligence by the Assured, the Owners or
24 > Managers of the Vessel, or any of them.

25 (Dkt. No. 122-3 at 17.)

26

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT
PAGE - 6

1    As discussed above, there is a genuine issue of material fact as to the cause of the

2  damage. The Underwriters argue that the damage is excluded regardless of cause, because both

3  parties allege that the other was negligent. (Dkt. No. 94 at 2-3.) The Inchmaree Clause

4  specifically excepts damage from the lack of due diligence by an assured or the vessel's owner.

5  (Dkt. No. 94 at 2-3; Dkt. No. 122-3 at 17.) Northland is an assured under the Policy; Channel is

6  an additional assured and the Barge's owner. (Dkt. No. 95-13 at 12; Dkt. No. 122-3 at 36.)

7    Nonetheless, Channel responds that coverage is still available under the Policy. (Dkt. No.

8  125 at 19-20.) As support, Channel cites the Policy's Cross-Liability Clause, which states:

9    In the event of one of the Assureds incurring liability to any other of the Assureds,
10   this policy shall cover the Assured against whom claim is or may be made in the
     same manner as if separate policies had been issued to each Assured. Nothing
11   contained herein shall operate to increase Underwriters' limit of liability as set
     forth herein.
12
13   Any act or omission on the part of any Assured shall not prejudice the rights of
     any other Assured under this policy.

14  (Dkt. No. 122-3 at 9.) Critically, however, this provision offers protection to "the Assured

15  *against whom* claim is or may be made"—here, Northland. (Emphasis added.) Indeed, the

16  purpose of cross-liability clauses is to ensure that "the policy will not preclude the right of the

17  original insured to recover for claims made against the original insured by additional insureds or

18  their employees." *See* Rod D. Margo, <u>Aspects of Insurance in Aviation Finance</u>, 62 J. Air L. &

19  Com. 423, 457-58 (1996). Thus, the Cross-Liability Clause is not available to overcome the

20  Policy's explicit exclusion of damage caused by the owner's or assured's negligence.

21    The Underwriters' motions for summary judgment are GRANTED.

22  **III.    CONCLUSION**

23    For the foregoing reasons, Northland's motion for summary judgment (Dkt. No. 96) is

24  DENIED and the Underwriters' motions for summary judgment (Dkt. Nos. 94, 98) are

25  GRANTED.

26    //

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT
PAGE - 7

DATED this 18th day of December 2015.


John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER ON DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT
PAGE - 8